IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CHARLES W. BECK and ANNETTE S.    *
BECK,
                                   *

    Plaintiffs,
                                   *

vs.                              CASE NO. 3:16-CV-2 (CDL)
                                 *

BANK OF AMERICA HOME LOANS,
                                 *

    Defendant.
                                   *

O R D E R

Plaintiffs Charles and Annette Beck, who are proceeding *pro se*, filed this action against "Bank of America Home Loans," ("the Bank") which serviced the Becks' home loan until October 2015.[1]  The Bank filed a motion to dismiss (ECF No. 15).  For the reasons set forth below, that motion is granted. The Becks' summary judgment motion (ECF No. 20) is denied as moot.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual

---

[1] Bank of America, N.A. responded on behalf of "Bank of America Home Loans," asserting that "'Bank of America Home Loans' . . . is not a known entity" and assuming that the Becks intended to name Bank of America, N.A. instead.  Def.'s Mot. to Dismiss 1 n.1, ECF No. 15.

allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.,* 495 Fn.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

The Becks attached a number of documents, including a copy of public records regarding the assignment of their security deed, to their response brief and to their summary judgment motion.  The Bank attached to its motion to dismiss a copy of a public record regarding the assignment of the Becks' security deed.  "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  Neither side challenged the authenticity of the assignment documents, which are central to at least some of the Becks' claims.

FACTUAL ALLEGATIONS

The Court reviewed the allegations in the Becks' *pro se* Complaint, "Memorandum Opinion," summary judgment motion, and

2

responses to the Bank's Motion to Dismiss.  The precise details of the transactions are not entirely clear, but the basic gist of the Becks' Complaint appears to be that the Becks were permitted to take out a home loan larger than they could afford, were unable to keep up with their loan payments, and were unable to secure a loan modification on terms they could afford.

The Becks allege that when they applied for a home loan from Countrywide Home Loans, Inc. in 2006, Countrywide falsified Plaintiffs' income information and approved a loan that was too large for Plaintiffs to repay.  Compl. ¶ 4, ECF No. 1; *id.* Attach. 1, Mem. in Supp. of Compl. 2-3, ECF No. 1-1.  The Becks executed a security deed to Mortgage Registration System, Inc. as Nominee for Countrywide Home Loans, Inc.  Mem. in Supp. of Compl. 2; Pls.' Resp. to Mot. to Dismiss Ex. D, 9-21, Security Deed, ECF No. 18-4.  The security deed was assigned to the Bank, and the Bank began servicing the loan.  Mem. in Supp. of Compl. 2.  The Becks maintain that the loan payment was too high for their income.

On several occasions, the Becks sought a loan modification from the Bank.  In 2012, the Bank qualified the Becks for a loan modification.  Pls.' Resp. to Mot. to Dismiss 2, ECF No. 18; Pls.' Mot. for Summ. J. Ex. E, Loan Modification Trial Period Plan, ECF No. 20-5.  The Becks assert that the proposed loan modification payments were too high for their income.  At some

point in 2015, the Bank apparently initiated foreclosure proceedings against the Becks. Pls.' Mot. for Summ. J. Ex. A, Notice of Sale Under Power, ECF No. 20-1 at 5. There is no allegation that a foreclosure sale has taken place.

In October 2015, the Becks' security deed was assigned to Federal National Mortgage Association ("Fannie Mae"). Def.'s Mot. to Dismiss Ex. A, Assignment of Security Deed, ECF No. 15-1; *accord* Pls.' Mot. for Summ. J. Ex. D, Assignment of Security Deed 1, ECF No. 20-4. And, as the Becks acknowledge, the servicing of their loan transferred from the Bank to Seterus, Inc. in October 2015.

DISCUSSION

The Bank contends that the Becks' Complaint should be dismissed as an impermissible shotgun pleading. It is a bit difficult to discern what claims the Becks are attempting to assert against the Bank. But it is not impossible. Taken together, Plaintiffs' *pro se* Complaint, "Memorandum Opinion," summary judgment motion, and responses to the Bank's Motion to Dismiss reveal the hazy contours of the Becks' claims. The Court will therefore evaluate the claims.

The Becks contend that Countrywide falsified the Becks' income information on their loan application so they would qualify for a loan that was larger than they could afford. The Becks further contend that the Bank refused to grant them a loan

4

modification that they could afford.   And the Becks appear to assert that the assignments of the security deed were invalid. They invoke three statutes: 12 U.S.C. § 2605; 18 U.S.C. § 1014; and 18 U.S.C. § 1028.   They seek damages, a declaration that neither the Bank nor Fannie Mae is authorized to foreclose on the property, and an injunction enjoining the Bank from "naming a substitute trustee" or initiating foreclosure proceedings. The Court addresses each issue in turn.

## I.   Claims Under 12 U.S.C. § 2605

The Becks invoke 12 U.S.C. § 2605, which is a provision of the Real Estate Settlement Procedures Act ("RESPA") that requires certain disclosures to residential mortgage borrowers. Based on the Court's review of the Becks' filings, the Becks did not allege any facts to support a RESPA claim.   They did not allege facts to suggest that the Bank failed to inform them of a transfer of the servicing of the loan, and they did not allege any facts to suggest that the Bank failed to provide an adequate response to a qualified written request.   Therefore, the Becks do not state a claim under RESPA.

## II.  Claims Under 18 U.S.C. §§ 1014 & 1028

The   Becks   also   invoke   18   U.S.C. § 1014   and 18 U.S.C. § 1028.   Both are criminal statutes.   Section 1014 prohibits making a false statement regarding the value of property for the purpose of influencing certain entities,

including mortgage lenders. Section 1028 prohibits the production, transfer, and possession of false identification documents. Even if the Becks had alleged facts to support a conclusion that the Bank had violated these statutes—which they did not—neither statute provides a private right of action. *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 may be disregarded in this suit. They are criminal in nature and provide no civil remedies."); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (noting that criminal statutes are rarely read to imply a private right of action and that a private right of action is only implied if there is a statutory basis for inferring that Congress intended to create a private right of action). Therefore, the Becks do not state a claim under 18 U.S.C. §§ 1014 and 1028.

### III. Mortgage Fraud Claim

The Becks contend that the Bank committed "mortgage fraud," which they also refer to as a "predatory lending" claim. They assert that an employee of their loan originator, Countrywide, falsely stated the Becks' income in their loan application so that the Becks would be approved for a home loan they could not afford. The Becks did not make any clear allegations explaining why the Bank should be liable for Countrywide's alleged actions during the loan origination process, and the Court cannot speculate on this point. Even if the Becks had made such

allegations, they did not point the Court to a legal basis for their mortgage fraud claim.

The Court recognizes that residential mortgage fraud is a crime under Georgia law.  O.C.G.A. § 16-8-102.  That statute prohibits deliberate misstatements during the mortgage lending process.  It also prohibits the filing of documents that contain deliberate misstatements with the county registrar.  But the residential mortgage fraud statute does not create a private right of action for mortgage fraud.  *See, e.g.*, *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1380-81 (M.D. Ga. 2011) (collecting cases finding no private right of action under O.C.G.A. § 16-8-102).  So, if the Becks are attempting to bring their mortgage fraud claim under Georgia's residential mortgage fraud statute, their claim must be dismissed.

To the extent the Becks are attempting to assert a common law fraud claim under Georgia law, they have not alleged facts to support the elements of such a claim.  "The essential elements of a fraud claim are: '(1) false representations made by the defendant, (2) which the defendant knew were false, (3) made with an intent to deceive the plaintiff, (4) justifiable and detrimental reliance by the plaintiff on such representations, and (5) damages suffered by the plaintiff as a result.'" *Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 390, 774 S.E.2d 197, 209 (2015) (quoting *Chiaka v.*

*Rawles*, 240 Ga. App. 792, 794–795(2), 525 S.E.2d 162, 164–65 (1999)).  What the Becks allege is that Countrywide's mortgage loan interviewer inaccurately stated the Becks' gross monthly income on the Becks' loan application to Countrywide and that Countrywide approved the loan.  There is no allegation of a false representation the Bank intentionally made to the Becks with the intent to deceive them, and there is no allegation that the Becks justifiably and detrimentally relied on any false representation from the Bank.  Thus, to the extent the Becks are attempting to assert a common law fraud claim under Georgia law, their claim must be dismissed.

The Court notes that the Becks summarily allege that the Bank "imposed unfair and abusive loan terms on the Becks."  Mem. in Supp. of Compl. 2.  The Becks did not elucidate which loan terms they contend are unfair and abusive.  They do allege that the Bank charged them "high interest," along with late fees and penalties. *Id.* at 3.  The Becks did not point to any authority suggesting that their 7.375% annual interest rate violates Georgia law. *Cf.* O.C.G.A. § 7-4-18 (criminalizing usurious interest rates "greater than 5 percent per month").  They do not allege that the fees charged by the Bank were not permitted by the loan documents, and they do not allege that the Bank charged them fees that violate Georgia law. *Cf.* O.C.G.A. § 7-6A-3(3) (setting limits on late payment charges).  In sum, the Becks'

conclusory allegations regarding "unfair and abusive terms" do not state a claim for relief.

## IV.  Failure to Modify Loan Claim

The Becks assert that the Bank rebuffed their efforts for assistance under the Home Affordability Modification Program ("HAMP").  There is no private right of action under HAMP. *Miller v. Chase Home Fin., LLC,* 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam).  And "[t]he majority of courts have determined that homeowners are incidental beneficiaries, not intended beneficiaries, of the contract between a participating servicer and the federal government to participate in the HAMP program." *Stroman v. Bank of Am. Corp.,* 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012).  The Becks did not make any factual allegations to suggest that they are intended beneficiaries of a contract under HAMP.  Therefore, to the extent the Becks are attempting to assert a claim under HAMP, this claim fails.

## V.  Assignment of the Deed

Finally, Plaintiffs contend that the assignments of the security deed, including the most recent assignment to Fannie Mae, are invalid.  They ask the Court to conclude that the initiation of non-judicial foreclosure proceedings would be wrongful because the assignments were flawed.  But under Georgia law, a debtor does not have standing to challenge the assignment of a security deed unless (1) the deed or the assignment grants

the debtor some basis for disputing the assignment or (2) the assignment violated a statutory protection and injured the debtor. *Ames v. JP Morgan Chase Bank, N.A.*, 783 S.E.2d 614, 620-21 (Ga. 2016). The Becks do not suggest that either exception is met here. Furthermore, it is clear that the Bank takes the position that it has no further interest in the security deed. *See id.* at 621 (noting that debtors "cannot manufacture standing for themselves by asserting a claim that the party with standing has not asserted"). Any claims based on the alleged invalidity of the assignments must therefore be dismissed.

CONCLUSION

As discussed above, the Becks' Complaint fails to state a claim. The Bank's motion to dismiss (ECF No. 15) is granted, and the Becks' summary judgment motion (ECF No. 20) is denied as moot.


IT IS SO ORDERED, this 21st day of June, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA